UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| General Accident Insurance Co. of America | Civil Action No. 11-cv-1682 |
| versus | Judge Tucker L. Melançon |
| Aggreko, LLC | Magistrate Judge C. Michael Hill |

**RULING**

Before the Court is plaintiff General Accident Insurance Company of America's (General Accident) Motion for Summary Judgment, *R. 20*, its Memorandum in Support, *R. 20-2*, defendant Aggreko, LLC's (Aggreko) Memorandum in Opposition, *R. 25*, and General Accident's Reply Memorandum in Support, *R. 33*.  Also before the Court is Aggreko's Motion for Partial Summary Judgment, *R. 21*,[1] its Memorandum in Support, *R. 21-3*, General Accident's Response, *R. 24*, and Aggreko's Reply Memorandum in Support, *R. 35*.

For the reasons that follow, the Court will deny General Accident's Motion for Summary Judgment, *R. 20*, and will grant in part and deny in part Aggreko's Motion for Partial Summary Judgment, *R. 21*.  Due to the parties' failure to adequately address all claims in their motions and supporting and opposition memoranda filed in connection therewith, the Court must defer issuing a final Judgment until the parties have been given the opportunity to file supplemental briefs in accordance with the Order that will issue herein. Under Fifth Circuit precedent and Federal Rule of Civil Procedure 56(f), a court may not grant summary judgment *sua sponte* on a ground not raised by the parties, *see Wernecke v. Garcia*, 452 F. App'x 479, 482 (5th Cir. 2011), which the

---

[1] Although styled a Motion for Partial Summary Judgment, in the Court's view of the arguments made in its supporting memoranda, Aggreko's Motion in effect asks the Court to grant summary judgment on all of General Accident's claims.

1

Court would otherwise be inclined to do, without giving notice to the parties in order for them to brief the issue.

## I.  PROCEDURAL HISTORY

There is no dispute between the parties as to the material facts.  On March 17, 2000, General Accident issued a commercial general liability policy to Aggreko (Policy No. 0009918-14) ("Policy") covering the period from October 1, 1999 to October 1, 2000. *R. 20-4, p. 1.*  Under the Policy, General Accident agreed to pay damages on Aggreko's behalf in "excess of any deductible amounts." *R. 20-4, p. 39.* The deductible amount set by an endorsement to the Policy was $41,250.00 per occurrence.  *R. 20-4, p. 39.* The Policy stated in pertinent part that General Accident "may pay any part or all of the deductible amount to effect settlement of any claim or 'suit'" on behalf of its insured, Aggreko. *R. 20-4, p. 40.*  "[U]pon notification of the action taken," the Policy stated that Aggreko would "promptly reimburse [General Accident] for such part of the deductible amount as has been paid by [General Accident]" to effect such a settlement of a claim or suit. *R. 20-4, p. 40.*

General Accident made fifteen separate payments to third parties settling property damage and personal injury claims against Aggreko that arose during the Policy's coverage period. *Lynne Young Aff., R. 20-3.*  The first of these payments was made on July 20, 2000, and the final payment was made on January 17, 2002. *R. 20-3; see R. 21-3.*  Each payment was subject to the Policy's deductible reimbursement provision.  *R. 20-4, p. 40.*  On December 15, 2010, Lynne Young, financial manager at OneBeacon Insurance, the successor entity to General Accident, sent a one-page letter to Aggreko, notifying Aggreko that it owed General Accident the sum of $117,181.00, representing the total of the deductible amounts paid by General Accident to

2

third parties on behalf of Aggreko. *R. 20-6*.[2]

The parties stipulated that the December 15, 2010 letter from Young was the first notice Aggreko received of payments made under the Policy, the amounts of the settlements, and the deductibles owed that form the basis of this litigation.  *R. 16*.  Aggreko failed to reimburse General Accident after receipt of the December 15 letter, and General Accident filed its complaint on September 19, 2011 alleging liability for breach of contract and unjust enrichment under Louisiana law. *R. 1*.[3]  In their June 15, 2012 Rule 26(f) Report, the parties stipulated that the total payment made by General Accident on behalf of Aggreko under the Policy was $159,131.87, rather than the $117,181.00 as stated in Young's letter. *R. 16*.  Aggreko subsequently conceded in its September 17, 2012 Motion for Partial Summary Judgment that three claims settled under the Policy, representing $84,640.38 of the amount stipulated to in the Rule 26(f) Report as having been paid by General Accident, fell within ten years of General Accident's filing this suit.  *R. 21-3, p. 2*.[4]

## II.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is

---

[2]  Appended to Young's letter were the relevant portions of the Policy and the endorsement, as well as a summary of the claims that were settled during the coverage period and the respective settlement amounts.  *R. 20-6*.

[3]  The parties have agreed to treat each individual payment as giving rise to a "separately-enforceable claim for reimbursement." *R. 20-2*; *R. 16*. As Aggreko's failure to reimburse each payment made by General Accident on behalf of Aggreko under the Policy would represent a separate breach of contract or a separate unjust enrichment, the Court will treat each payment separately for purposes of analyzing the relevant legal issues.  For the sake of brevity, the Court will refer to the two bundles of claims as the "breach of contract claims" or as the "unjust enrichment claims" for purposes of this Ruling.

[4]  The three payments to which Aggreko refers are: (1) No. 32 LP 002061 in the sum of $2,140.30, paid October 1, 2001 (2) No. OFA-00825W-01-01 in the sum of $41,250.00, paid December 30, 2001; and (3) No. 38 LP 374901 in the sum of $41,250.00, paid January 17, 2002. *See R. 21-3, p. 2-3, 8*.

entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.,* 37 F.3d 1069 (5th Cir. 1994) *(en banc).* Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[5] *Id.* at 322–23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed. R. Civ. P. 56(e). There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law,

---

[5] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the nonmoving party of these essential elements renders all other facts immaterial. *Id* at 322.

the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.,* 477

U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the

court must be satisfied that no reasonable trier of fact could have found for the non-moving party.

*Id.*

## III.  LAW AND ANALYSIS[6]

### A.  General Accident's Breach of Contract Claims

To decide the motions before the Court, two issues related to General Accident's breach

of contract claims must be resolved, the first being whether General Accident's breach of

contract claims for reimbursement for deductibles paid on behalf of Aggreko under the Policy are

barred by Louisiana's prescription statute, Article 3499.  General Accident contends that its

December 15, 2010 letter, notifying Aggreko of the reimbursement amounts owed pursuant to

the Policy, marked the beginning of the prescriptive period. *R. 20-2, p. 5*. Therefore, General

Accident argues, it filed its Complaint well within the prescriptive period. *R. 20-2, p. 5*.

Aggreko, on the other hand, asserts that the prescriptive period for each payment that General

Accident made on its behalf commences on the date of payment, and as all but three of the

deductible payments were made more than ten years prior to the filing of this litigation,

---

[6] Although the Policy lists its "Place of Issue" as Philadelphia, Pennsylvania, *R. 20-4, p. 3*, the parties do not dispute that Louisiana state law should be applied by the Court in resolving the issues before it.  This action was filed in the Western District of Louisiana pursuant to federal diversity.  *See* 28 U.S.C. § 1332.  Accordingly, the Court must apply the substantive law, including the conflict-of-law rules, of the forum state, Louisiana. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Duhon v. Union Pac. Ress. Co.*, 43 F.3d 1011, 1013 (5th Cir. 1995).  Under the Louisiana choice-of-law regime, "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." La. Civ. Code Ann. art. 3537.  Among the relevant considerations under Article 3537 are "the pertinent contacts of each state to the parties and the transaction," the "object of the contract," the "place of domicile . . . or business of the parties," and the "nature, type, and purpose of the contract." *Id.*  As these factors all favor the application of Louisiana state law to the interpretation of the insurance policy issued to cover Aggreko, a Louisiana corporation, Louisiana state law will be applied to decide the legal issues before the Court.

Louisiana's prescriptive statute bars General Accident's recovery for all but those three payments that total $84,640.38. *R. 21-3, p. 2.*

The second issue related to General Accident's breach of contract claims is whether Louisiana law bars those claims because General Accident waited an unreasonable amount of time before making demand on Aggreko to reimburse it under the Policy.  Aggreko asserts that General Accident "should not be allowed an indefinite amount of time in which to bring its reimbursement claims."  *R. 21-3, p. 6.* Relying on Louisiana Civil Code Article 1773, Aggreko contends that General Accident's "notice of demand for reimbursement was not brought within a reasonable time period" as required by Louisiana law. *R. 25, p. 7.*  General Accident asserts that there is no "rule of law that would cut off these private parties' right to bargain for a flexible reimbursement deadline in this case." *R. 24, p. 4-5.* General Accident further contends that to impose such a deadline for demand would "essentially rewrite" the contractual language the parties had agreed on. *R. 24, p. 4-5.*

### 1.  Louisiana's Prescriptive Period for Breach of Contract Claims

Under Louisiana law, a contract "is an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code Ann. art. 1906.   An insurance policy is a specific type of contract "between the insured and the insurer and has the effect of law between the parties." *Fleniken v. Entergy Corp.*, 99-3023, 99-3024, p. 6 (La. App. 1 Cir. 2/16/01); 790 So. 2d 64, 68, *writs denied*, 01-1269 (La. 6/15/01); 793 So. 2d 1250, *and* 01-1295 (La. 6/15/01); 793 So. 2d 1252.  As a contract, an insurance policy "should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 3 (La. 6/27/03); 848 So. 2d 577, 580.  In general,

6

the "[i]nterpretation of a contract is the determination of the common intent of the parties." La. Civ. Code Ann. art. 2045.  Whether the language used in the contract "is clear or ambiguous is a question of law." *Cadwallader*, 02-1637 at 4, 848 So. 2d at 580.

In interpreting the contract, the words of the contract "are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* at 3, 848 So. 2d at 580 (citing La. Civ. Code Ann. art. 2047).  When the words used are "clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046. Thus, if the wording of an insurance policy contract is clear and unambiguous, then the contract "must be enforced as written." *Cadwallader*, 02-1637 at 4, 848 So. 2d at 580.  Accordingly, "courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms." *Id.*[7] A contract is ambiguous under Louisiana law only "when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (quoting *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996)).

"Parties are free" under Louisiana law, in insurance contracts as with any contractual agreement, "to contract for any object that is lawful, possible, and determined or determinable." La. Civ. Code Ann. art. 1971.  In this case, General Accident and Aggreko contracted for the Policy that covered Aggreko during the period from October 1, 1999 to October 1, 2000. *R. 20-4,*

---

[7] "The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent." *Id.* at 3-4, 848 So. 2d at 580.

*p. 1.* The Policy included the specific provision at issue here in section D of the endorsement:

> We[, General Accident,] may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you[, Aggreko,] shall promptly reimburse us for such part of the deductible amount as has been paid by us.[8]

*R. 20-4, p. 40.* The Court finds the foregoing provision to be clear, explicit, and unambiguous. *See Cadwallader*, 02-1637 at 4, 848 So. 2d at 580.

Under the clear language of the contract, Aggreko had an obligation to "promptly reimburse" General Accident for the deductible amounts General Accident paid upon notice of the payments having been made. *R. 20-4, p. 40.* The obligation to reimburse was triggered expressly by General Accident's "notification of the action taken." *R. 20-4, p. 40.* This provision taken as a whole constitutes an "uncertain" term for performance of a contractual obligation dependent on the occurrence of an event, *i.e.*, General Accident's notification of payment made on Aggreko's behalf. Such a provision is explicitly authorized by the Louisiana Civil Code. *See* La. Civ. Code Ann. art. 1778 ("A term for the performance of an obligation . . . is uncertain when it is not fixed but is determinable either by the intent of the parties or by the occurrence of a future and certain event."). Under the Policy, Aggreko's conceded failure to reimburse General Accident for the monies paid on Aggreko's behalf after notification by General Accident of the settlements made and the deductible amounts thereof would constitute a breach of the insurance contract.

As any breach by Aggreko could occur only after it failed to promptly reimburse General

---

[8] The endorsement entitled "Deductible Liability Insurance" that modified specific policy terms is included as part of the Policy. La. Rev. Stat. Ann. § 22:881 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.").

Accident in response to General Accident's notification, General Accident's claims for breach of contract would fall well within Louisiana's prescriptive statute for personal actions.[9] Article 3499 states that "[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."  La. Civ. Code Ann. art. 3499.  It is well-settled that Article 3499 covers breach of contract claims.  *See, e.g., Phillip v. Home Ins. Co.*, 95-406, p. 4 (La. App. 5 Cir. 2/27/96); 671 So. 2d 943, 946, *writ denied*, 96-1238 (La. 6/28/96); 675 So. 2d 1124.  Thus, the "ten year prescriptive period for contracts does not begin running until the date the contract is allegedly breached." *Plainview Area Ass'n, Inc. v. La. Dep't of Transp. & Dev.*, 02-0503, p. 3 (La. App. 3 Cir. 12/11/02); 832 So. 2d 1172, 1174; *see also Loewer v. Tex. Gas Transmission Co.*, 615 F. Supp. 1, 2 (W.D. La. 1984) (applying Article 3499); *Roba, Inc. v. Courtney*, 09-0508, p. 8 (La. App. 1 Cir. 8/10/10); 47 So. 3d 500, 507; *Hartwig Moss Ins. Agency, Ltd. v. Kelly*, 96-1423 (La. App. 4 Cir. 1/29/97); 688 So. 2d 196, 197 n.1; *Phillip*, 95-406 at 4, 671 So. 2d at 946.[10] This is so because "the cause of action"—here, General Accident's breach of contract claim—"cannot be asserted before it accrues, and it must follow that any prescriptive period for asserting the cause of action cannot begin to run until the cause of action comes into being."

---

[9] "Liberative prescription is a mode of barring of actions as a result of inaction for a period of time."  La. Civ. Code Ann. art. 3447; *see Taranto v. La. Citizens Prop. Ins. Corp.*, 10-0105, p. 5 (La. 3/15/11); 62 So. 3d 721, 726 (describing prescription under Louisiana's "civilian tradition" as the loss of "certain rights as the result of the passage of time").  Accordingly, Louisiana's prescription statutes "are designed to prevent old and stale claims from being prosecuted." *Wells v. Zadeck*, 11-1232, p. 7 (La. 3/30/12); 89 So. 3d 1145, 1149.

[10] The case Aggreko relies on for the position that the prescriptive period commences at a point *other than* the time a contract is breached in fact supports General Accident's position. *See Donald G. Lambert Contractor, Inc. v. Parish of Jefferson*, 97-140, p. 7 (La. App. 5 Cir. 9/17/97); 700 So. 2d 894, 897, *writ denied*, 97-2557 (La. 12/19/97); 706 So. 2d 459 ("It is well settled that the ten year prescriptive period for liberative prescription *commences to run at the time of the breach* [of the contract] or at the time the cause of action arises. . . . Those breaches of [defendant's] contractual responsibilities, if they occurred, occurred sometime between 1972 and 1974 when the construction project was underway.  That is at least twenty years prior to suit being filed against it.  Thus, they are clearly barred.") (emphasis added).

*August v. Grand Lake Constr.*, 02-632 (La. App. 5 Cir. 12/30/02); 837 So. 2d 78, 80 (citing *Orleans Parish Sch. Bd. v. Pittman Constr. Co.*, 260 So. 2d 661, 667 (La. 1972)).  Although "[o]rdinarily" the party raising the prescription defense "bears the burden of proof" as to the applicability of the defense, "if prescription is evident on the face of the pleadings" as Aggreko has made it in its Answer to General Accident's Complaint, *R. 8*, "the burden shifts to the plaintiff to show the action has not prescribed." *Wells*, 11-1232 at 7, 89 So. 3d at 1149. "Generally, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it. . . . [The construction] which favors maintaining, as opposed to barring an action, should be adopted" when choosing between two constructions of a prescription statute. *Id.* at 6-7, 89 So. 3d at 1149.

As the undisputed facts establish that General Accident notified Aggreko on December 15, 2010 of the claims General Accident settled on behalf of Aggreko and the amounts of the deductibles therefore during the period in which Aggreko, the insured, was covered under the Policy, *R. 20-6, p. 1*, General Accident has met its burden in showing that the breach of contract claims alleged in its Complaint, *R. 1*, fall within Article 3499's ten-year prescriptive period covering such claims.  The cases cited by General Accident make clear that the prescriptive period did not begin to run until Aggreko allegedly breached its obligations under the contract to "promptly reimburse" General Accident after General Accident notified Aggreko of the settlements made on its behalf.[11]  Aggreko's arguments regarding the distinctions between the

---

[11] In *Smyth v. Board of Commissioners for Atchafalaya Basin Levee District*, the contract at issue stated that "'It is further agreed and understood that the said party [the Board of Commissioners] . . . is to lend itself with all its rights, power and privileges and perogatives [sic] to perfect its title or the title acquired under this agreement to all lands which it could have . . ., and to do so whenever requested by [the plaintiffs].'" 87 F. Supp. 138, 139 (E.D. La. 1949), *aff'd*, 187 F.2d 11 (5th Cir. 1951), *cert. denied*, 342 U.S. 821 (1951).  When the plaintiffs filed suit seeking a judgment against the Board declaring that the Board was required to execute and deliver the instrument

factual contexts surrounding the contract disputes in those cases and the case at bar are without merit, as it is the contractual language—and the parties' alleged breaches of those contracts—that make these cases directly on point.

The Court does not find any of the cases cited by Aggreko applicable to the case at bar. Aggreko relies heavily on *United States v. Bellard*, 674 F.2d 330 (5th Cir. 1982), as a foundation for its position that "prescription should begin to run upon payment of the deductibles." *R. 35, p. 2.* The factual scenario in *Bellard*, in which the United States government was a guarantor of a loan under the Federal Insured Student Loan Program, *Bellard*, 674 F.2d at 333, is readily distinguished from this case. The Fifth Circuit's opinion went to great lengths to distinguish the concept of an insurer from a surety or a guarantor. Aggreko ignores the court's clear language, asserting that the "facts of *Bellard* are analogous to the instant case because the insurance contract between General Accident and Aggreko contains indemnification elements" and that

---

following the plaintiffs' demand for such action and the Board's refusal, the Board raised the defense of prescription. *Id.* at 139-40, 144. The district court stated that the "obligation assumed by the Board at the time of the execution of the contact [sic] was to lend its assistance whenever requested so to do." *Id.* at 144. Therefore, "since there was no fixed period stipulated in the contract within which the obligations assumed by the Board were to be performed," the "right of action which plaintiffs are seeking to enforce in this suit, *did not arise until plaintiffs made demand upon the Board.*" *Id.* (emphasis added). The court thus found that the prescriptive period began to run when the plaintiffs made their formal demand by letter, and as they filed suit alleging a breach of contract claim within ten years of this demand, the prescription defense was inapplicable. *Id.* The Fifth Circuit affirmed the district court's decision. *Bd. of Comm'rs*, 187 F.2d at 12.

In *Plainview*, the plaintiffs contacted Louisiana's Department of Transportation and Development (DOTD) in 1993 to request upkeep pursuant to contracts area residents entered into with the state in 1958, in which the state had agreed to continually improve and maintain a specific road in the area. *Plainview*, 02-0503 at 1-2, 832 So. 2d at 1173. DOTD did not comply, and the plaintiffs filed suit in 1995 to compel enforcement of the 1958 contracts and defendants' obligations under the contracts to maintain the road. *Id.* at 1, 832 So. 2d at 1173. In response, the defendants asserted a prescription defense based on Article 3499, arguing that the ten-year prescriptive period had come and gone after the contracts were executed in 1958. *Id.* at 2, 832 So. 2d at 874. The court in *Plainview* rejected this defense, stating that the "ten year prescriptive period for contracts does not begin running until the date the contract is allegedly breached." *Id.* at 3, 832 So. 2d at 874 (citing *Dauterive Contractors, Inc. v. Landry & Watkins*, 01-1112, p. 9 (La. App. 3 Cir. 3/13/02); 811 So. 2d 1242, 1249). Finding that the "only evidence that the contracts at issue were breached is the refusal of DOTD to perform the requested maintenance on [the road in question] in 1993," the court held that the suit filed only two years later was therefore "timely" and denied the prescription defense. *Id.*

11

General Accident's "deductible liability insurance endorsement is essentially a contract for suretyship." *R. 21-3, p. 6*. The *Bellard* court observed:

> Compensated surety contracts are not converted into contracts of insurance simply because the third party is compensated. . . . [W]hile insurance contracts are in many respects similar to surety company contracts . . . there is a wide difference between the two contracts.  Insurance has been defined as a contract whereby one undertakes to indemnify another against loss, damage or liability arising from an unknown or contingent event; *whereas a contract of suretyship is one to answer for the debt, default or miscarriage of another*. . . . The [surety] contract creates a tripartite relation between the party secured, the principal obligor, and the surety, and the rights, remedies and defenses of a surety cannot be disassociated from this relationship although the contract is called one of insurance.

*Id.* at 334 (emphasis added) (quoting *Madison Co. Farmers Ass'n v. Am. Employers Ins. Co.*, 209 F.2d 581, 584 (8th Cir. 1954)).  Thus, the holding in *Bellard* that the prescriptive period begins on the date when the guarantor satisfies the borrower's delinquent obligation can *only* be understood in the unique context of a contract of suretyship or guaranty.  Here, there are only two parties involved: an insurer and an insured.  There is no lender, debtor, or third-party guarantor or surety.  The holding in *Bellard* is thus of no moment to this case.

Aggreko also urges the Court to apply the rationale from *Specialty National Insurance Co. v. U-Save Auto Rental of America, Inc.*, a district court decision from the Middle District of Florida, to this case; however, the *determinative fact* on which the court's holding is based in *Specialty* is materially distinguishable from this case, and the court's holding is therefore not applicable.[12]

---

[12] Like this case, the dispute in *Specialty* involved a "claim for breach of a contractual provision that obligated Defendants to repay Specialty [the insurer] for any deductible amounts paid to settle claims under the insurance policy." 2008 WL 4888864, at *5 (M.D. Fla. Nov. 12, 2008).  The insurance policy provision at the center of the dispute read as follows: "To settle any claim or 'suit' we may pay all or any part of any deductible shown in the Schedule.  If this happens, you must reimburse us for the deductible or the part of the deductible we paid." *Id.* at *2.  The court rejected the insurer Speciality's argument that it could "not have brought suit until Defendants

## 2.  Louisiana Law Requiring General Accident to Seek Reimbursement Within a Reasonable Time

Although not barred by prescription, General Accident's breach of contract claims must be denied due to its failure to timely notify Aggreko of its demand for reimbursement.  Citing Article 1773, Aggreko asserts in its Memorandum in Opposition that "General Accident was required under Louisiana law to seek reimbursement of the deductible payments within a reasonable time period and it failed to do so." *R. 25, p. 6*; *see also R. 35, p. 3*.  General Accident contests what it labels Aggreko's "fallback" position that it "somehow lost its right to seek reimbursement because it waited too long to make a demand" by arguing that Aggreko "never resolves the central issue raised by these motions—*i.e.,* when, exactly, prescription began to run." *R. 33, p. 2*.  General Accident argues that Louisiana law concerning the "reasonable time" relates only to the allowable period for bringing its suit, while not actually addressing Aggreko's argument related to the period of time allowed under Louisiana law for triggering Aggreko's contractual obligations for reimbursement.  General Accident fails to address the applicability of Article 1773 to this litigation or allege material facts indicating that its decision to wait nearly nine years before notifying Aggreko was reasonable.  As General Accident did not act within a reasonable time before notifying Aggreko of its demand for reimbursement, Aggreko's motion for summary judgment as to General Accident's breach of contract claims will be granted.

General Accident concedes that Aggreko is "correct" that it "does not possess some *carte*

---

breached their obligation to reimburse Specialty for the deductibles and such an obligation did not arise until Specialty demanded payment and Defendants refused to pay." *Id.* at 5. Citing the language of the insurance policy, the court observed specifically that "*[t]he only express condition precedent* to the insured's duty to reimburse is Specialty's settlement of a suit or claim." *Id.* at *6 (emphasis added).  This is the linchpin of General Accident's argument in the case at bar: the express condition precedent required to trigger the reimbursement duty of Aggreko, the insured, *is the notification provision* that is entirely lacking from the contract in *Specialty*.

*blanche* authority to delay demand for reimbursement *ad infinitum*." *R. 33, p. 2*.  Under

Louisiana law, the Policy's notification provision—"upon notification of the action taken"—that

triggers Aggreko's obligation to "promptly reimburse" the insurer for deductibles paid on its

behalf is a suspensive condition: Aggreko's corresponding obligation is conditional on

fulfillment of that notification provision.  *See* La. Civ. Code Ann. art. 1767 ("A conditional

obligation is one dependent on an uncertain event.  If the obligation may not be enforced until the

uncertain event occurs, the condition is suspensive.").[13]  Under Article 1773, "[i]f no time has

been fixed for the occurrence of the event," the suspensive condition that triggers the conditional

obligation "may be fulfilled *within a reasonable time*." La. Civ. Code Ann. art. 1773 (emphasis

added); *see Prudhomme*, 06-516 at 7, 941 So. 2d at 107 ("As there is no indication that the

parties agreed upon a time period in which the judgment was to be signed, the terms of the

agreement can be viewed as needing to be fulfilled within a reasonable time.").[14]

The current language of Article 1773 was adopted in 1984, and the Revision Comments

published with the Article's amended text note that the "reasonable time" limitation was added

because under the previous text—which contained no such limitation on the time allowed for

fulfillment of the suspensive condition when no limit was expressly set by the contract—the

parties "*could be bound under condition for life, or even for generations on end, which is not*

*practical*." *Jarrell v. Carter*, 632 So. 2d 321, 324 n.2 (La. App. 1 Cir. 1993), *writ denied*, 94-

---

[13] *Cf. Prudhomme v. Prudhomme*, 06-516, p. 6 (La. App. 3 Cir. 9/27/06); 941 So. 2d 102, 106 ("The record supports a finding that the terms 'upon settlement of judgment' and 'upon judgment' are indicative of a conditional obligation.").

[14] *See also Bunge Edible Oil Corp. v. M/V Torm Rask & M/V Fort Steele*, 756 F. Supp. 261, 267 (E.D. La. 1991) ("[I]f an agreement which is subject to a suspensive condition does not provide a period of time in which the condition must be fulfilled, the condition may be fulfilled within a reasonable time") (citing Article 1773).

0700 (La. 4/29/94); 637 So. 2d 467 (emphasis in original) (quoting §(b) of the 1984 Revision

Comments to La. Civ. Code Ann. art. 1773).  The Louisiana First Circuit in *Jarrell* noted that the

"redactors of the Louisiana Civil Code," in amending the text of Article 1773, "recognized the

practicality of limiting the time in which a condition may be fulfilled when no time has been

fixed. . . . Otherwise, as so cautioned by the redactors, the parties could be bound *ad infinitum*."

*Id.* [15]  It is precisely this result that Aggreko seeks to avoid, arguing that under Article 1773,

General Accident had to notify Aggreko of its demand for reimbursement pursuant to the

Policy's notification provision within a more reasonable time than nine years.

The Court finds that General Accident's decision to wait nearly nine years from the date

the final payment was made to a third party under the Policy until sending the one-page demand

letter and the appended summary of payments made was unreasonable under Article 1773 as a

matter of law.  There is no factual basis in the record—and General Accident has offered no

explanation in its numerous filings—providing the slightest justification for the nearly nine-year

delay that might support an argument that this delay could be considered reasonable.  General

Accident admits that "there are no 'dimmed memories' or 'lost evidence' in this case" and that

"[a]ll of the reimbursement claims have been fully documented." *R. 33, p. 3.* As General

Accident failed to address Aggreko's argument for denial of the breach of contract claims under

---

[15] *Cf. Morvant v. Russell & Clemmons, Inc.*, 11 So. 2d 45, 48 (La. App. 1 Cir. 1943) ("Where a party to a contract undertakes to do some particular act, the performance of which depends entirely on himself, and the contract is silent as to the time of performance, the law implies an engagement that it shall be executed within a reasonable time, without reference to extraordinary circumstances.") (internal citations omitted). The court in *Morvant* did not provide true guidance as to the definition of a "reasonable time," noting only that "[p]erhaps as accurate a definition of reasonable time as may be given is that it is such time as is necessary conveniently to do what the contract requires should be done." *Morvant*, 11 So. 2d at 48 (quoting 17 Corpus Juris Secundum, Contracts § 17).  The court determined that a period of time just shy of two years for the defendant to liquidate certain accounts and repay debts to the plaintiff under their contractual agreement was "more than a reasonable time" to do so under the facts of the case. *Id.*

Article 1773, General Accident has offered no basis whatsoever for the Court to determine that the delay could have been reasonable based on the undisputed facts. The failure to fulfill the suspensive condition within a reasonable time makes Aggreko's conditional obligation to reimburse General Accident unenforceable, thereby prohibiting the possibility of breach on the part of Aggreko for failing to reimburse General Accident after receipt of the December 2010 notice. Thus, General Accident's breach of contract claims must be dismissed as a matter of law. The limited Louisiana jurisprudence related to Article 1773 supports this conclusion.[16] Aggreko's motion for summary judgment on General Accident's breach of contract claims will be granted.

**B. General Accident's Unjust Enrichment Claims**

### 1. Application of Louisiana's Prescriptive Statute to the Unjust Enrichment Claims

General Accident's Complaint also states a claim for unjust enrichment as to each deductible payment it made on behalf of Aggreko under the Policy for which it was not reimbursed. *R. 1, ¶¶ 16-17.* But for a cursory mention in its Motion for Summary Judgment and supporting memoranda, General Accident does not address the unjust enrichment claim in significant detail. *See R. 20-2, p. 2* ("Plaintiff's complaint asserts causes of action for breach of

---

[16] *See Bunge Edible*, 756 F. Supp. at 267 (holding that the plaintiff's failure to fulfill the suspensive condition in a contract—to obtain an agreement from a vessel owner to waive a limitations period—within two months of the defendants' conditional agreement to also waive the limitations period, was unreasonable under Article 1773, rendering the defendants' conditional obligation unenforceable in the lawsuit); *Prudhomme*, 06-516 at 7-8, 941 So. 2d at 107 (holding that defendant, by failing to return a riding lawnmower within eight months of signing a settlement agreement with his ex-wife—a suspensive condition of that settlement—had waited an "arguably unreasonable period of time" under Article 1773, which rendered enforcement of the remainder of the obligations under the settlement agreement "invalid"); *Stoessell v. D'Luca*, 07-0435, p. 3 (La. App. 1 Cir. 12/21/07); 2007 WL 4480777, at *3 (unpublished decision) (holding that "three years is more than a reasonable time period" under Article 1773 for the parties to fulfill the suspensive condition—the application for certain permits—after they executed a real estate contract, and as the "suspensive condition was unfulfilled," the option under the contract—the conditional obligation—was "no longer enforceable").

contract and unjust enrichment.").  In fact, General Accident repeatedly asserts in its Motion for

Summary Judgment that the "sole" issue in the suit is "whether Plaintiff's claims for breach of

contract are barred under Louisiana's ten-year prescriptive statute for personal actions." *R. 20-2,*

*p. 1*.  Throughout its motion and memoranda filed in support thereof, General Accident refers to

its causes of action as "claims for reimbursement," *see R. 20-2, p. 3-4; R. 24, p. 1*. It is unclear, in

light of General Accident's assertions regarding the "sole issue" in the case, whether these so-

called "claims for reimbursement" are intended to encompass both the breach of contract claims

and the unjust enrichment claims or just the former.  General Accident also fails to outline the

elements that comprise a claim for unjust enrichment under Louisiana law, or to marshal the

evidence on which the Court might grant summary judgment on those claims, although its

statements imply that the Court's summary judgment ruling would dispose of the case in its

entirety.

Aggreko's Motion for Partial Summary Judgment, on the other hand, "asks this Court to

dismiss any and all of General Accident's reimbursement claims on deductible payments that

were paid by General Accident." *R. 21*. Aggreko's defense, as originally asserted in its Answer,

*R. 8*, was that General Accident's claims were subject to Article 3499's prescriptive period of ten

years on "personal actions." *R. 21-3, p. 5*.  Aggreko conceded in its Motion that three of General

Accident's claims for reimbursement totaling $84,640.38, asserted in the form of either breach of

contract or unjust enrichment claims, were not time-barred under the prescriptive statute because

they were paid on October 1, 2001, December 30, 2001, and January 17, 2002.  The dates for

these three payments fall within ten years of the filing of the Complaint on September 19, 2011.

*R. 21-3, p. 2-3, 8*.  Although Aggreko also did not discuss the elements of the unjust enrichment

cause of action in any detail, it is clear from its motion and supporting memoranda it sought summary judgment on *both* the breach of contract and unjust enrichment claims through application of Louisiana's prescription statute.

None of General Accident's claims for unjust enrichment are prescribed under Louisiana law.  Unjust enrichment claims, like breach of contract claims, are governed by the ten-year prescriptive period under Article 3499. *See, e.g., Trust for Melba Margaret Schwegmann v. Schwegmann Family Trust*, 09-968, p. 9 (La. App. 5 Cir. 9/14/10); 51 So. 3d 737, 743; *Onstott v. Certified Capital Corp.*, 05-2548, p. 5 (La. App. 1 Cir. 11/3/06); 950 So. 2d 744, 747; *Johnson v. Hardy*, 98-2282 (La. App. 1 Cir. 11/5/99); 756 So. 2d 328, 332 n.4. As with breach of contract claims, a claim for unjust enrichment "cannot be asserted before it accrues." *See August*, 02-632, 837 So. 2d at 80.  Although "[o]rdinarily" the party raising the prescription defense "bears the burden of proof" as to the applicability of the defense, "if prescription is evident on the face of the pleadings" as Aggreko has made it in its Answer, *R. 8*, "the burden shifts to the plaintiff to show the action has not prescribed." *Wells*, 11-1232 at 8, 89 So. 3d at 1149.  "In the absence of evidence, the objection of prescription must be decided upon the facts alleged in the petition, and all allegations contained therein are accepted as true." *Id.*

 "The claim of unjust enrichment arises when '[a] person . . . has been *enriched without cause* at the expense of another person[.]'" *Bennett v. Dauzat*, 07-1555, p. 4 (La. App. 3 Cir. 5/21/08); 984 So. 2d 215, 218 (quoting La. Civ. Code Ann. art. 2298) (emphasis added).  The statutory source for the unjust enrichment cause of action is found in Article 2298 of the Louisiana Civil Code, which states that a "person who has been enriched without cause at the expense of another person is bound to compensate that person." La. Civ. Code Ann. art. 2298.

18

"The root principle of an unjustified enrichment . . . is that the plaintiff suffers an economic detriment for which he should not be responsible, while the defendant receives an economic benefit for which he has not paid." *Scott v. Wesley*, 589 So. 2d 26, 27 (La. App. 1 Cir. 1991). "Under Louisiana law, the requisite elements of a claim for unjust enrichment are: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) no other available remedy at law [for the impoverishee]." *Pinegrove Elec. Supply Co., Inc. v. Cat Key Constr., Inc.*, 11-660, p. 5 (La. App. 5 Cir. 2/28/12); 88 So. 3d 1097, 1100 (citing cases).

An "enrichment" is "an economic benefit received by [a defendant's] estate, whether by an addition to it or by a prevention of an economic detriment to it, without his furnishing compensation intended to be adequate for it." *Gray v. McCormick*, 94-1282, p. 11 (La. App. 3 Cir. 10/18/1995); 663 So. 2d 480, 486 (quoting Justice Albert Tate, Jr., *The Louisiana Action for Unjustified Enrichment*, 50 Tul. L. Rev. 883 (1976), 51 Tul. L. Rev. 446 (1977)).  Therefore, "[a] person is enriched when his assets increase, without adequate compensation, or his liabilities diminish." *Gulfstream Servs., Inc. v. Hot Energy Servs., Inc.*, 04-1223, p. 6 (La. App. 1 Cir. 3/24/05); 907 So. 2d 96, 101, *writ denied*, 05-1064 (La. 6/17/05); 904 So. 2d 706.  As to the fourth element of the unjust enrichment cause of action, "in practical terms," the "absence of justification . . . means that 'no legal cause justifies the enrichment . . . in the sense that no lawful contract or provision of law was intended to permit the enrichment or to prevent the impoverishment or to bar attack on the enrichment or the impoverishment[.]'" *Kilpatrick v. Kilpatrick*, 27,241, p. 7 (La. App. 2 Cir. 8/23/95); 660 So. 2d 182, 187, *writ denied*, 95-2579 (La.

12/15/95); 664 So. 2d 444 (quoting Tate, *The Louisiana Action for Unjustified Enrichment*).

Although General Accident's argument against prescription of its unjust enrichment claims is couched in somewhat ambiguous terms, under the facts as alleged in its Motion for Summary Judgment, which are not disputed by Aggreko, General Accident has sustained its burden to establish that the action has not prescribed.  The cause of action for unjust enrichment did not accrue until Aggreko, without legal cause, refused General Accident's December 2010 demand for reimbursement pursuant to the Policy.  It is arguable that Aggreko was "enriched" at the time General Accident made each payment to a third party, as it was at this point that Aggreko did not incur the economic detriment of paying from its own coffers to satisfy claims made by third parties against it.  However, such "enrichment" was not "without legal cause or justification" until Aggreko failed to honor its contractual obligations to General Accident under the Policy.  The making of payments by General Accident to third parties on behalf of Aggreko did not establish a cause of action for unjust enrichment; to the contrary, General Accident expressly undertook this responsibility under the Policy as Aggreko's insurer.  Enrichment *without legal justification* was complete only when Aggreko breached its contractual obligation to reimburse General Accident "upon notification" by General Accident.  This occurred at the earliest in December of 2010.  General Accident's claims for unjust enrichment are therefore well within Louisiana's ten-year prescriptive period governing such claims.  Thus, Aggreko's motion for summary judgment on this basis must be denied.

### 2.  Grant of Summary Judgment on the Unjust Enrichment Claims Cannot Be Made at This Time

Aggreko has proffered no other legal basis for the Court to consider in order to grant summary judgment on General Accident's unjust enrichment claims, although such a basis likely

20

exists based on the record before the Court.  Under settled Fifth Circuit jurisprudence, "a district

court may not grant summary judgment *sua sponte* on grounds not requested by the moving

party." *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 632 (5th Cir. 2004) (quoting *John Deere Co.*

*v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987)).  Pursuant to Federal Rule of

Civil Procedure 56, a district court may grant summary judgment on grounds "not raised by a

party," but must first give "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(2).

Notice is required if the district court is to rule on summary judgment *sua sponte* "even where

summary judgment may have been appropriate on the merits." *Atkins v. Salazar*, 677 F. 3d 667,

678 (5th Cir. 2011) (internal citations omitted); *see also Wernecke v. Garcia*, 452 F. App'x 479,

482 (5th Cir. 2011) ("The district court's having failed to give the [party against whom summary

judgment was entered] notice [of the grounds on which it ruled *sua sponte*], its . . . ruling [on this

issue] was improper under both *Baker* and Rule 56(f)(2).").

  Louisiana law dictates that the remedy of unjust enrichment "shall not be available if the

law provides another remedy for the impoverishment or declares a contrary rule." La. Civ. Code

Ann. art. 2298.  "Pursuant to La. Civ. Code art. 2298, the remedy of unjust enrichment is

subsidiary in nature, and shall not be available if the law provides another remedy. . . . The unjust

enrichment remedy is only applicable to fill a gap in the law where no express remedy is

provided." *Walters v. MedSouth Record Mgmt., LLC*, 10-0353, p. 2 (La. 6/4/10); 38 So. 3d 243,

244 (internal quotation marks and citations omitted).  "The mere fact that a plaintiff does not

successfully pursue another available remedy does not give the plaintiff the right to recover under

the theory of unjust enrichment." *Pinegrove*, 11-660 at 6, 88 So. 3d at 1101.  Under the fifth

element of the unjust enrichment claim, "it is not the success or failure of other causes of action,

but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied." *Garber v. Badon & Ranier*, 07-1497, p. 10-11 (La. App. 3 Cir. 4/2/08); 981 So. 2d 92, 100, *writ denied*, 08-1154 (La. 9/19/08); 992 So. 2d 943.  "The existence of a 'remedy' which precludes application of unjust enrichment does not connote the ability to recoup [the] impoverishment by bringing an action against a solvent person. It merely connotes the ability to bring the action or seek the remedy." *Carriere v. Bank of La.*, 95-3058 (La. 12/13/96); 702 So. 2d 648, 672 (on rehearing).[17]

In spite of what appears to be well settled law, Aggreko's failure to address this potential basis for the Court to consider granting summary judgment as to General Accident's unjust enrichment claims prevents the Court from doing so at this juncture.  The Court will therefore grant each party ten (10) days from the date of the entry of this Ruling to submit a brief on the following issue or to advise the Court that no brief will be forthcoming:

> Has General Accident failed to state a cause of action, requiring the grant of summary judgment against it, for its unjust enrichment claims, because it had an alternative remedy at law, breach of contract, available to it given the undisputed facts of the case presently before the Court?

The parties are to address only the issue set out above in their supplemental briefs using pinpoint citations to all applicable law, jurisprudential or statutory, in support of their respective positions, and neither party's brief is to exceed five (5) pages.  No reply brief is to be filed by a party unless requested by the Court to do so.  The Court will reserve ruling on Aggreko's motion for summary judgment as to General Accident's unjust enrichment claims until the parties have submitted

---

[17] *See also Sheets v. Yamaha Motors Corp., U.S.A.*, 849 F.2d 179, 184 (5th Cir. 1988) ("Louisiana law makes clear that when an adequate remedy at law is available, the court may not resort to principles of equity."); *Harris Builders, L.L.C. v. URS Corp.*, 861 F. Supp. 2d 746, 755 (E.D. La. 2012) ("The fact that [the plaintiff] has pled an action in tort, which states a claim, demonstrates that another legal remedy is available.") (citing *Walters*, 10-0353 at 2, 38 So. 3d at 244).

their supplemental briefs, or have advised the Court that no briefs or reply briefs will be forthcoming.

## IV. CONCLUSION

Based on the foregoing, General Accident's Motion for Summary Judgment, *R. 20*, will be denied. Aggreko's Motion for Partial Summary Judgment, *R. 21*, will be granted as to General Accident's breach of contract claims. The Court will defer ruling on General Accident's Motion for Summary Judgment on the unjust enrichment claims for the reasons set forth above. Consistent with Federal Rule of Civil Procedure 56(f), each party is to file a supplemental brief via ECF of no longer than five (5) pages in length in response to the question posed by the Court in section III(B)(2) of this Ruling, or to advise the Court that no such brief will be forthcoming, on or before 1:00 p.m. CST on Friday, December 28, 2012.

It is the Court's present intention to issue its Judgment on the parties' motions for summary judgment on unjust enrichment after giving due consideration to the parties' supplemental briefs, if any there be.

**THUS DONE AND SIGNED** at Lafayette, Louisiana, this 17th day of December, 2012.

_____
Tucker L. Melançon
UNITED STATES DISTRICT JUDGE